U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

APR 2 0 2007

ROBERT H. SHEMWELL, CLERK
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| RHONDA GALLAWAY, ET AL | : | DOCKET NO. 03-113 |
| VS. | : | JUDGE TRIMBLE |
| EMPIRE FIRE & MARINE INSURANCE, ET AL | : | MAGISTRATE JUDGE WILSON |

### MEMORANDUM RULING

Before the Court are two motions: (1) "Motion for Summary Judgment on Behalf of Afton Newman" (doc. #108) and (2) "Motion of Univar USA Inc. for Summary Judgment" (doc. #111). Defendant, Univar USA Inc., adopts by reference the arguments, authorities, evidentiary materials and Statement of Uncontested Facts of defendant, Afton Newman. Hence, for the sake of judicial economy and because both motions address the same issues, the two motions will be considered together. For the following reasons, both motions will be granted.

### FACTUAL STATEMENT

On or about November 16, 2001, Afton Newman was driving a semi-trailer truck westbound on I-10 near the Welsh, Louisiana exit at approximately 5:00 p.m. The trailer was loaded with 12 plastic totes of hydrochloric acid. Suddenly, a vehicle cut in front of Mr. Newman causing him to brake to avoid hitting the vehicle. Even though Mr. Newman was able to control his truck and there was no collision, he was advised by radio by another trucker that he had a leak. Mr. Newman pulled to the side of the highway and discovered that three of the plastic totes had cracked and were leaking hydrochloric acid ("HCL").

Plaintiffs, Ronald Gallaway and Mary Medlin, were traveling westbound in a car on I-10 near

the Welsh exit around the time of the leak. Plaintiffs, Dennis and Rhonda Gallaway, were following in a truck behind Ronald Gallaway's car. Because of the leak, all traffic was stopped by the Welsh police approximately 200 feet back from the truck and diverted back east towards the Welsh exit. The Gallaway plaintiffs testified that they drove over the grass onto the service road and back east away from the truck. The State police hazardous material unit was notified and was on site shortly thereafter. Also, ASCO Environmental Services conducted a clean-up of the site.[1] The Jennings and Weslsh Fire Departments were dispatched to the scene, and the LDEQ was called to investigate the incident.

The Gallaway plaintiffs[2] after driving onto the service road away from the accident scene, continued on their way, checked into a motel in Orange, Texas and attended a family gathering until 3:00 a.m. the following morning. The Gallaway plaintiffs first sought medical attention on December 17, 2001, over 30 days after the incident, and after they were referred by their attorney whom they visited a week after the incident.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] A fact is "material" if its existence or

---

[1] The nine intact totes were reloaded onto another trailer and taken to their destination and the three cracked totes were returned to the Vo-pak facility from which they came.

[2] All plaintiffs including Mary Medlin will hereinafter be referred to as the "Gallaway plaintiffs."

[3] Fed. R.Civ. P. 56(c).

nonexistence "might affect the outcome of the suit under governing law."[4]  A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[5] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[6]  Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[7]  The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[8]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[9]  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[10]

## LAW ANALYSIS

In order to prevail on a negligence claim, the plaintiff must prove all five elements of the "duty-risk" analysis. The Louisiana Supreme Court has stated that the determination of liability in

---

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[5] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[6] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[7] *Anderson*, 477 U.S. at 249.

[8] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[9] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[10] *Anderson*, 477 U.S. at 249-50.

3

a negligence case usually requires proof of five separate elements: (1) proof that defendant had a duty to conform his conduct to a specific standard, (2) proof that the defendant's conduct failed to conform to a specific standard, (3) proof that the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries, (4) proof that the defendant's substandard conduct was a legal cause of the plaintiff's injuries, and (5) proof of actual damages.[11] In a Louisiana tort action for personal injury, a plaintiff must establish by a preponderance of the evidence that it is more probable than not that the personal injury of which he complains was caused by the defendant's conduct.[12]

Defendants maintain that Plaintiffs cannot meet their burden of proof with respect to causation. "Causation is the fundamentally important linchpin connecting the allegedly wrongful conduct to liability and therefor, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[13] "In cases claiming personal injury from exposure to toxic substances, it is essential that the plaintiff demonstrate that she was, in fact, exposed to harmful levels of such substances."[14]

Defendants maintain that Plaintiffs have failed to produce any evidence to establish that they were in fact exposed to harmful levels of hydrochloric acid. Defendants point out that Plaintiffs have failed to provide any expert testimony or medical or scientific evidence to establish that Plaintiffs were exposed to harmful levels of HCL. Plaintiffs offer their own testimony that they were

---

[11] *Fowler v. Roberts*, 556 So.2d 1 (La. 1989).

[12] *Creel v. S.A. Tarver & Son Tractor Co., Inc.*, 537 So.2d 752, 753 (La.App. 1st Cir. 1988); *In re Air Crash Disaster Near New Orleans, La. July 9, 1982*, 764 F.2d 1084 (5th Cir. 1985).

[13] *Anderson v. Libert Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505 (1986).

[14] *Maddy v. Vulcan Materials, Co.*, 737 F.Supp. 1528, 1533 (D.Kan.1990).

exposed to HCL. Ronald Gallaway testified that he observed a massive fire and explosion as the cylinder tanker truck with a "large-circumference stainless steel tank"[15] caught fire.[16] Ronald claims to have observed a cloud of vapor which he described as a heavy fog, that was dark, smoky and semi-gray.[17] Ronald also claims to have been "engulfed in the cloud" and alleges that his vision was impaired.[18]

Defendants do not dispute that there were HCL fumes at the scene. However, they do dispute that Plaintiffs were exposed to harmful levels of HCL.

Mr. Newman testified that he could smell the fumes, but only when he was next to his truck and trailer.[19] Mr. Newman did not observe a "cloud" until the doors were opened around 8:00 p.m.[20] well after the Plaintiffs had left the scene of the incident. Even though Mr. Newman was standing by the leaking HCL, he suffered no adverse health reactions.[21]

Defendants submit the expert testimony and report of Tracey Dodd, president of Unites States Risk Management, LLC and a toxicologist with over 13 years of experience in environmental and

---

[15] Ronald Gallaway deposition, dated September 9, 2003, Defendants' Exhibit #9, pp. 49-51.

[16] *Id.*, pp. 68-69. The Court has reviewed all of the Reports by each of the agencies at the scene of the accident. There was no fire, no explosion, and no large circumference stainless steel tanker truck. Even though the Court is not weighing the evidence for purposes of this motion, we are concerned about Ronald's testimony that is totally contradicted by the evidence.

[17] *Id.*, p. 53.

[18] *Id.* pp. 54 and 50.

[19] Defendants' Exhibit C, Newman Depo., p. 61-62.

[20] *Id.*, p. 86.

[21] *Id.*, p. 61-62.

safety projects including risk assessment. Ms. Dodd has provided expert testimony in numerous cases concerning exposure to hazardous chemicals.[22] Ms. Dodd conducted air dispersion modeling to determine where the footprint of the HCL vapors from the spill would have been using the Areal Locations of Hazardous Atmospheres model ("ALOHA").[23]

Ms. Dodd reviewed numerous documents for her assessment including the LDEQ incident report, National Weather Service Weather Data for Lake Charles on November 16, 2001, LA State Police Hazmat Report, Ronald and Dennis Gallaway's depositions, Welsh Volunteer Fire Department Report, Jennings Fire Department Report, Univar documents, Gallaway medical records, and the Water Profile Sheet from Chemical Waste Management. Ms. Dodd made the following "worst case scenario" assumptions: (1) the maximum possible amount of the spill (500 gallons of HCL), (2) the spill was confined and occurred instantaneously, (3) there was saturation on the ground not accounted for and the source was at ground level, and (4) the duration of the spill occurred over a one hour period. Ms. Dodd concluded that based on the worst-case scenario inputs, the weather data that day, and the position of the Plaintiffs (based on their own testimony) 150 feet to the east of the truck, that the Gallaway Plaintiffs could not have been exposed to harmful levels of HCL such that would have caused their alleged chronic symptoms.[24]

---

[22] Defendants' Exhibits 11 and 12, Tracey Dodd's CV and Report.

[23] The ALOHA model has been validated and approved by the U.S. EPA and is used by emergency responders to predict the dispersion of a chemical in the event of an accidental release. The model uses several factors including chemical properties, meteorological date, and location data which are input into the model to determine how a hazardous gas cloud might disperse in the atmosphere after a chemical release.

[24] Defendants' Exhibit 12.

Plaintiffs argue there was a vapor cloud as evidenced by the DEQ Cummings' report[25] and the Jennings Fire Dept. Incident Report.[26] No one disputes that there "was a vapor cloud." The Plaintiffs submit their own testimony that they passed through this vapor cloud. However, Plaintiffs do not dispute the summary judgment evidence submitted by Defendants and provided by their expert, Ms. Dodd, that the Gallaway Plaintiffs could not have been exposed to harmful levels of HCL. Plaintiff, Mary Medlin, takes issue with a Report made by Todd Cummins with the Louisiana Department of Environmental Quality which remarks that the wind was from the northwest at 5 m.p.h. as opposed to the report by the Lake Charles Airport (and relied upon by Ms. Dodd) that reported that the wind was from the northeast at 5 m.p.h. As noted by Defendants, Mr. Cummings did not have any instruments at the scene to measure the wind direction. More significantly, Plaintiffs have failed to submit any summary judgment evidence, technical, scientific, or otherwise, of how the wind direction reported by Mr. Cummings would alter or modify Ms. Dodd's conclusion, if at all.

Unsupported self-serving declarations are inadequate to overcome a motion for summary judgment.[27] Plaintiffs have failed to submit any evidence other than their own self-serving testimony that they were exposed to harmful levels of HCL. Because Plaintiffs have failed to establish an essential element of their claim, the motions for summary judgment will be granted dismissing all of Plaintiffs' claims against defendants, Afton Newman and Univar, USA, Inc.

The Court finds it unnecessary to address Mr. Newman's negligence in loading the totes, and

---

[25] Plaintiffs' Exhibit 3.

[26] Plaintiffs' Exhibit 4.

[27] *Vais Arms, Inc. V. George Vais*, 383 F.3d 287 (5th Cir. 2004).

whether the Plaintiffs suffered any injuries because Plaintiffs have failed to create a genuine issue of material fact for trial regarding whether or not they were exposed to harmful levels of HCL.

Based on the Court's ruling on lack of causation, there would likewise be no liability against Empire Fire & Marine Insurance Co.("Empire"), the insurer of Oak Ridge Distribution, Inc., which had previously been dismissed on November 17, 2003.[28] Judgment will be rendered dismissing all claims against Empire as well.

## CONCLUSION

Based on the foregoing, the motions for summary judgment will be granted dismissing with prejudice all of Plaintiffs' claims against defendants, Afton Newman and Univar, USA, Inc. and the claims against Empire Fire & Marine Insurance Co. will be dismissed as well.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 19th day of April, 2007.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[28] Doc. #24.